**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID VASQUEZ, *on behalf of himself and the Class,*<br><br>                          Plaintiff,<br><br>        v.<br><br>THE CHEFS' WAREHOUSE, INC.,<br><br>                          Defendant. | Case No.:<br><br>**CLASS COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff DAVID VASQUEZ ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class Complaint against Defendant THE CHEFS' WAREHOUSE, INC., ("Defendant"), and states as follows:

<u>**INTRODUCTION**</u>

1.      Plaintiff alleges, pursuant to the State wage laws where Defendant does business, that he and others similarly situated are entitled to recover from Defendant: (1) unpaid wages due to time-shaving, (2) statutory penalties, (3) liquidated damages; and (4) attorneys' fees and costs.

2.      Defendant THE CHEFS' WAREHOUSE, INC., is a distributor of foods and ingredients, operating out of 52 distribution centers, utilizing a fleet of delivery trucks to fill customer orders. Defendant's distribution centers operate primarily from the following locations: (i) New York, (ii) Washington, D.C., (iii) Los Angeles, California, (iv) San Francisco, California, (v) Las Vegas, Nevada, (vi) Miami, Florida, (vii) Portland, Oregon, (viii) Columbus, Ohio, (ix) Cincinnati, Ohio, (x) Chicago, Illinois, (xi) Seattle, Washington, (xii) Sacramento, California,

(xiii) Philadelphia, Pennsylvania, (xiv) Texas, and (xv) Denver, Colorado (collectively with other distribution centers operating in the United States not listed here, the "Distribution Centers").

3.      Plaintiff and putative class members, who are current and former drivers of Defendant, were victims of Defendant's unlawful policy which resulted in underpayments to employees. Specifically, Defendant instituted a nationwide policy of not compensating the meal breaks of their drivers, who were (i) not permitted a free and clear meal-break and (ii) were regularly forced to work through lunch entirely. Plaintiff and putative class members were never permitted a free and clear meal-break because their delivery schedules forced them to drive through meals and, even on days when drivers could stop to eat, drivers remained on duty, had to remain in radio contact, and had a continued duty to protect their vehicles throughout their breaks. *See Isreal v. Raeford Farms of La., LLC*, 784 F. Supp. 2d 653, 663 (W.D. Wis. 2011) (finding employees were "entitled to compensation when they were required to wear their radios and tools during lunch, could not leave the site, and had their lunch breaks interrupted frequently…"); *cited by*, *Mitchell v. JCG Indus.*, 929 F. Supp. 2d 827, 838-839 (N.D. Ill. 2013); *see also* 29 C.F.R. Section 785.19 ("The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating."). Plaintiff brings this wage and hour class action on behalf of himself and all drivers employed by Defendant nationwide, who during the applicable State limitations periods up to and including the present (the "Class Period"), were similarly underpaid by Defendant in violation of protections afforded under the laws and regulations of the following States:

1)  Alaska: Alaska Wage and Hour Act, Alaska Statute §23.10.050 *et seq.*;
2)  Arizona: Arizona Fair Wages and Healthy Families Act, A.R.S. § 23-340 *et seq.*, and the Arizona Minimum Wage Act Practice and Procedure A.A.C. R20-5-1201 *et seq.*;
3)  Arkansas: Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et seq.*;

4) California: California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; and the California Labor Code and relevant Industrial Welfare Commission Wage Order;

5) Colorado: Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101 *et seq.,* and the Colorado Minimum Wage Act, Colo. Rev. Stat. § 8-6-101 *et seq.*;

6) Connecticut: Connecticut Wage Act Conn. Gen. Stat. §§31-58, *et seq.*;

7) Delaware: Delaware Minim Wage Law, Delaware Code Title 19-90 *et seq.*;

8) District of Columbia: District of Columbia Minimum Wage Act Revision Act, D.C. Code § 32-1001 *et seq.*;

9) Florida: Florida's Unpaid Wages Statute, Fla. Stat. 448.08 *et seq.*;

10) Georgia: Georgia Minimum Wage Law, Official Code of Georgia Annotated O.C.G.A. § 34-4 *et seq.*;

11) Hawaii: Hawaii Payment of Wages and other Compensation, Hawaii Revised Statutes Title 21 § *388-1 et seq.;*

12) Idaho: Idaho the Minimum Wage Law 44-1501 *et seq.*, Hours Worked Act §44-1201 *et seq.*, and the Liens, Mortgages and Pledges, Idaho Code § 45-601 *et seq.*;

13) Illinois: Illinois Labor Laws, 820 ILCS 105 *et seq.*;

14) Indiana: Indiana Wages Hours and Benefits, Ind. Code §22-2-2 *et seq.* Indiana Frequency of Wage Payments Ind. Code §22-2-5 *et seq.*;

15) Iowa: Iowa Wage Payment Collection Law, Iowa Code §91A *et seq.*;

16) Kansas: Kansas Labor and Industries Law, Kan. Stat. Ann. §44-1201 *et seq.*;

17) Kentucky: Kentucky Wage Statutes, K.Y. Rev. Stat. Ann. §§ 337.275 *et seq.*;

18) Louisiana: Louisiana's Wage Payment Act, Louisiana Revised Statutes §23:631 *et seq.*;

19) Maine: Maine Employment Practices Act, 26 Me. Rev. Stat. §§ 621-A, 626, 626-A, & 629, and the Maine Minimum Wage and Overtime Law, 26 Me. Rev. Stat. §§ 664 & 670;

20) Maryland: Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*, and the Maryland Wage Payment Collection Law, Lab. & Empl. § 3-501 *et seq.*;

21) Massachusetts: Massachusetts Minimum Fair Wage Law, Mass. Gen. L. ch. 151, §1A *et seq.*;

22) Michigan: Michigan Workforce Opportunity Wage Act, MCL §§ 408.411, *et seq.*;

23) Minnesota: Minnesota Fair Labor Standards Act, Minn. Stat. § 177.25, and the Minnesota Payment of Wages Act, Minn. Stat. § 181.101 *et seq.*;

24) Missouri: Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 290.500 *et seq.*;

25) Montana: Montana Minimum Wage and Overtime Compensation Act, MCA § 39-3-401 et seq., and the Montana Payment of Wages Law, MCA §39-3-201 *et seq.*;

26) Nebraska: Nebraska's Wage and Hour Act, Neb. Rev. Stat. § 48-1201 *et seq*., and the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 *et seq.*;

27) Nevada: Nevada Minimum Wage Amendment of the Nevada Constitution, Nev. Const. art. 15, § 16, and the Nev. Rev. Stat. Chapt. 60,

28) New Hampshire: New Hampshire Minimum Wage Law, N.H. Rev. Stat. § 279:1 *et seq.*;

29) New Jersey: New Jersey Wage Payment Law, N.J.S.A. §§ 34:11-4.1 *et seq.*; and the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-56a *et seq.*;

30) New Mexico: New Mexico Minimum Wage Law, N.M. Stat. Ann. §50-4 *et seq.*;

31) New York: New York Labor Law, Article 19 § 650 et seq., and Article 6 § 190 *et seq.*;

32) North Carolina: North Carolina Wage and Hour Act, N.C.G.S. § 95-25.1, *et seq.*;

33) North Dakota: North Dakota Labor and Employment Law., N.D. Cent. Code 34-01 *et seq.*, and the North Dakota Minimum Wage and Work Conditions Order N.D. Ain Code §4602-07-01 *et seq.*;

34) Ohio: Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01 *et seq.*;

35) Oklahoma: Oklahoma General Wage Law, O.S. §§40-165.1. *et seq.*;

36) Oregon: Oregon Minimum Wage Law, Oreg. Rev. Stat. §51-653, and the Oregon Rules Regulating Minimum Wage, Overtime and Working Conditions OAR 839-020-0000, *et seq.*;

37) Pennsylvania: Pennsylvania Minimum Wage Act 43 Pa. Cons. Stat. § 333.101 *et seq.*;

38) Puerto Rico: Puerto Rico Working Hours and Days Laws, 29 L.P.R.A. §§271, *et seq.*;

39) Rhode Island: Rhode Island Minimum Wage Act, R.I. Gen. Laws §§ 28-12-1, et seq., and the Rhode Island Wages Act, R.I. Gen. Laws §§ 28-14-1, et seq.;

40) South Carolina: South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.*;

41) South Dakota: South Dakota Labor and Employment Laws, S.D.C.L. 60-1-1, *et seq.*;

42) Texas: Texas Minimum Wage Act, Texas Labor Code § 62.001 *et seq.*;

43) Vermont: Vermont Wages and Medium of Payment Laws, 21 V.S.A. §§341, *et seq.*;

44) Virginia: Virginia Minimum Wage Act, VA Code § 40.1 *et seq.*;

45) Washington: Washington Minimum Wage Act, R.C.W. 49.46.005, *et seq.*; and Washington Minimum Wage Rules, WAC 296-126 *et seq.*;

46) West Virginia: West Virginia Minimum Wage and Maximum Hours Act, W. Va. Code §25-5C-1, *et seq.*;

47) Wisconsin: Wisconsin Hours of Work and Overtime Rules, Wis. Admin. Code, §§ DWD 272.01 et seq. and 274.01 *et seq.*; and

48) Wyoming: Wyoming Minimum Wages, W.S. 1977 §§27-4-201, et seq. and Collection of Unpaid Wages, §§27-4-501, *et seq.*

4.    Plaintiff further alleges that he and others similarly situated are entitled to recover

from Defendant, to the extent that gap-time claims (claims for unpaid wages for hours worked up to forty which do not implicate statutory minimum wage laws) or claims seeking damages for failure to pay for all hours of work, are not covered by the protection of a State's wage laws, the following pursuant to breach of contract and unjust enrichment: (1) wrongfully withheld or diverted payments, (2) punitive damages due to egregious conduct, and (3) attorneys' fees and costs.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action as defined by 28 U.S.C § 1332(d)(1)(B), whereby: (i) the proposed class consists of over 100 class members, (ii) a member of the putative class is a citizen of a different state than Defendant, and (iii) the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.

6.      As detailed below, Defendant is a resident of both Delaware, the State of its incorporation, and Connecticut, the State its headquarters, which is located at 100 East Ridge Road Ridgefield, Connecticut, 06877.

7.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 as this is Plaintiff worked out of Defendant's Distribution Center located in Bronx County, NY at the following address: 240 Food Center Dr, Bronx, NY 10474.

## PARTIES

8.      Plaintiff DAVID VASQUEZ is a resident of New Haven County, Connecticut.

9.      Defendant THE CHEFS' WAREHOUSE, INC. is a foreign business corporation organized under the laws of the State of Delaware with an address for its principal place of business

at 100 East Ridge Road Ridgefield, Connecticut, 06877, and an address for service of process and located at c/o Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

10.     Defendant THE CHEFS' WAREHOUSE, INC. operates all the Distribution Centers from which it provides delivery services through the same executive management team, and from the same headquarters with the same policies and procedures.  Each site is engaged in related activities, share common ownership, and have a common business purpose.

11.     At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Defendant.

12.     At all relevant times, Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the NYLL and State wage laws and the regulations thereunder.

13.     At all relevant times, the work performed by Plaintiff and Class Members were directly essential to the business operated by Defendant.

14.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## **RULE 23 CLASS ALLEGATIONS**

15.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt drivers and similarly situated employees, employed by Defendant in any State where they do business on or after the date that is six (6) years and 228 days (pursuant to State tolling during the COVID pandemic), or the relevant statutory period of each state's applicable labor law, prior to the filing of the Complaint in this case (the "Class Members").

16.     To the extent necessary, Plaintiff will designate subclasses for each of the States where Defendant has employees, including potential designation of Plaintiff as representative for New York Class members.

17.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendant. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under F.R.C.P. 23.

18.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendant, there is no doubt that there are more than forty members of the Class. The members of potential subclass employees total over forty (40) in each of the states where Defendant has employees, including the State of New York.  The proposed Class includes a Subclass of employees employed by Defendant. The Subclass comprises Class members employed in the States of New York, California, and States with requirements to provide wage notices and/or earning statements to employees ("Wage Notice Subclass"). Plaintiff is a member of the Class and the Subclass.

19.     Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendant, as alleged herein, of failing to pay wages due to time shaving.

20.     Further, due to the failure to include all hours of work in Class Members' compensation, paystubs and wage notices, Plaintiff's claims are also typical of those claims which could be alleged by any Wage Notice Subclass member.  Plaintiff and Wage Notice Subclass members did not receive wage notices and wage statements which accurately stated Plaintiff's and the Wage Notice Subclass' rates of pay and hours worked as required by state laws and regulations.

21.     Defendant's corporate-wide policies and practices affected all Class Members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

22.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

23.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing

the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

24.    Defendant and other employers throughout the country violate state wage laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

25.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)    Whether Defendant employed Plaintiff and Class Members within the meaning of the NYLL and/or State wage laws;

b)    What were and are the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant did not pay Plaintiff and the Class Members;

c)    At what common rate, or rates subject to common methods of calculation, was and are Defendant required to pay Plaintiff and Class Members for their work;

d)    Whether Defendant properly notified Plaintiff and Class Members of their hourly rate and overtime rate;

e) Whether Defendant paid Plaintiff and Class Members for the actual hours that they worked;

f) Whether Defendant provided wage and hour notices to Plaintiff and Class Members, at date of hiring and annually, per requirements of the NYLL and State wage laws; and

g) Whether Defendant provided proper wage statements to Plaintiff and Class Members per requirements of the NYLL and State wage laws;

## STATEMENT OF FACTS

26.     In or around January 2024, Defendant hired Plaintiff as a truck driver operating out of Defendant's Distribution Center located at 240 Food Center Dr, Bronx, NY 10474.  Plaintiff's employment with Defendant terminated in or around June 2024.

27.     While Plaintiff was working as a driver, Plaintiff was equally and regularly slated to work one of two schedules.  The first schedule was for 5 days of work (Monday and Wednesday through Saturday) with 8-hour shifts (4:00 am to 12:00 pm) per day, totaling 40-hours per workweek.  The second schedule was for 6 days of work (Monday through Saturday) with 8-hour shifts (4:00 am to 12:00 pm) per day, totaling 48-hours per workweek.  Throughout his employment, Plaintiff worked his scheduled hours plus hours in addition to those scheduled hours, which went uncompensated.  Class Members were scheduled to work similar hours and also worked hours in addition to those scheduled hours, which went uncompensated.

28.     Throughout Plaintiff's employment, Plaintiff earned an hourly compensation of $24.33 per hour.

Plaintiff's and Class Members' Wage and Hour Claims:

29.     Plaintiff and Class Members were not paid for all hours worked.

30.     All throughout Plaintiff's employment with Defendant, Defendant deducted from Plaintiff's and Class Members' compensation a thirty (30) minute meal break. Despite deducting these breaks from Plaintiff's compensable time, Plaintiff would be unable to take these breaks in

order to maintain Defendants' mandated schedule. Rather than take breaks, Plaintiff and Class Members were forced to work through meals to make all deliveries in compliance with Defendant's schedules. Moreover, on days where Plaintiff could have taken such breaks, the breaks came with restrictions and interruptions, which prevented Plaintiff from taking a free and clear break. Plaintiff and Class Members are still working during these supposed breaks for, among other reasons, the following: Plaintiff and Class Members were (1) required to maintain contact through phone and/or radios with Defendant at all time, even during supposed breaks, (2) stranded in different States and/or counties at Defendant's direction, (3) required to stay in the presence of the trucks and vehicles in their charge, (4) required to look up alternative routes in case of traffic incidents, (5) required to inspect the truck and/or vehicle for safety and potential damage, (6) required to be on call for services that Defendant requested, and (7) required to communicate with the dispatcher regarding any incidents.

31.    Each of these automatically deducted meal periods inure to the benefit of the employer.

32.    Due to the automatic deduction of 30 minutes per shift worked by Plaintiff and Class Members, Plaintiff (who worked 5-6 shifts per week) was undercompensated for 2.5-3 hours per week. Similarly, Class Members were undercompensated by approximately 2.5-3 hours for each week worked.

*Plaintiff's and Subclass Members' Wage Notice Claims:*

33.    Plaintiff and Subclass Members never received proper wage notices from Defendant. They also did not receive accurate wage statements from Defendant. 41 of 50 States require employees to receive at each pay period paystubs with accurate information as to employees work hours and rates of pay.

34.    The States of New York, Minnesota, and California have wage laws providing damages for the failure to provide accurate pay documents.  In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL— and California Labor Code 226 LC, Defendant knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Subclass Members at the beginning of their employment with Defendant.

35.    Defendant further violated the WTPA and California Labor Code 226 LC by failing to provide Plaintiff and Subclass Members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA and California Labor Code 226 LC. *See Shi Yong Li v. 6688 Corp*., 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp*., 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

36.    In failing to provide proper wage statements and notices, Defendant has failed to comply with the law in a manner that entails a concrete harm to an interest identified by the legislatures of New York, California, and Minnesota, As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010

S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

37.     Defendant knowingly and willfully operated their business with a policy of not providing proper wage notices and statements as required by NYLL and other state wage laws.

38.     In failing to provide proper wage statements and notices, Defendant has failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the State legislature of New York, Minnesota, and California. Defendant's failure to provide such notices trivializes the importance of these notices in protecting Plaintiff and Subclass Members interest in ensuring proper pay. Despite Defendant's conduct, there is a reason why the State legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

39.     Here, Defendant's failure goes beyond generating a risk of harm to Plaintiff and Subclass Members.   Defendant's conduct actually harmed Plaintiff and Subclass Members. Defendant's failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates and the failure to provide a wage notice properly listing the rate and frequency

Plaintiff Subclass Class Members were entitled to get paid, deprived employees of the ability to contest Defendant's calculations, allowed Defendant to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Subclass Members' rights. This conduct ensured Defendant's ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Moreover, Defendant's failure to provide wage notices allowed Defendant to hide the proper frequency of pay to employees. Defendant's failure to provide a wage notice to employees allowed Defendant to hide their responsibility and deprive employees of timely compensation.

40.     Due to Defendant's failure to provide legally mandated notices such as earning statements and wage notices, Defendant was able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation. The failure to provide notices continues to result in delayed payment of all proper wages owed to Plaintiff and Subclass Members. This delayed payment caused Plaintiff and Class Members to struggle to timely pay bills and delay or forgo purchases.

41.     Further, the direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected

on his final year paystub and W-2").[1]

42.    The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

43.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v.*

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

*Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting

*Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14,

2022)).

44.    Here, it is clear that Defendant's failure to provide Plaintiff and Subclass

Members with accurate wage statements entailed "concrete, downstream consequences" involving

monetary injury. Had the number of hours been accurately reported for a given pay period,

Defendant's automatic payroll system would have correspondingly increased the wages due for

that period, which in turn would have been reflected in the W-2s that Defendant submitted to the

IRS on behalf of Plaintiff and Subclass Members. That, in turn, would have increased Plaintiff's

and Subclass Members' entitlement to social security benefits. Because the inaccuracy prevented

this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

45.    Courts agree that the misreporting of wages constitutes a concrete injury

cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs
> in *Calderon* were former employees alleging the employer failed to pay
> their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs
> lacked standing to compel the employer to pay their FICA taxes because
> "[b]enefits do not. . . depend on whether the employer actually paid the
> taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting
> requirement because it is the reporting of income that triggers benefits, and losing
> benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made
> FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs'
> entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the
> [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

46.    The case at bar is somewhat different from *Coward* inasmuch as Defendant actually

underpaid Plaintiff and Subclass Members rather than merely misreporting their income. But this

distinction has no bearing on the question of Article III standing, since it is still the case that "it is

the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Subclass Members lost benefits by virtue of how Defendant reported their income, and how Defendant reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

47.    Whether or not any Plaintiff and Subclass Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

48.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Calderon,* 999 F.2d 1101 at 1106.

49.    Here, the problem is not merely challenging but insurmountable. Plaintiff and Subclass Members cannot even attempt to have their earnings report corrected because Defendant *did* report what they actually paid Plaintiff and Subclass Members. The problem, rather, is that Plaintiff and Subclass Members were underpaid. Yet the ultimate effect is the same—reduced

social security eligibility.  Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff and Subclass Members were irreversibly injured with respect to their social security benefits as soon as Defendant sent their W-2s to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

50.     Defendant knowingly and willfully operated their business with a policy of not providing proper wage notices and statements, at the beginning of employment and annually thereafter, pursuant to the requirements of NYLL and other state wage laws.

51.     Defendant knowingly and willfully operated their business with a policy of not properly compensating wages pursuant to the State wages laws to Plaintiff and Class Members, due Defendant's policy of time shaving.

52.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff and the Class, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I
### VIOLATION OF THE NEW YORK LABOR LAW

53.     Plaintiff repeats each and every previous allegation in this Class Action Complaint as if fully set forth herein.

54.     At all relevant times, Plaintiff and Class Members were employed by Defendant within the meaning of the NYLL §§ 2, 651, and 230.

55.     At all relevant times, Defendant had a policy and practice of failing to pay Plaintiff and Class Members all wages, including overtime, due to timeshaving, in violation of the NYLL.

56.     At all relevant times, Defendant had a policy and practice of failing to pay Plaintiff and Wage Notice Subclass Members the minimum required wage pursuant to Article 9 of NYLL

and overtime wages pursuant to NYLL § 232 and failure to compensate all owed benefits per NYLL § 231.

57.     Defendant willfully violated the rights of Plaintiff and Class Members by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek due to time shaving.

58.     Defendant knowingly and willfully failed to provide accurate wage and hour notices, at the date of hiring and annually thereafter, to Plaintiff and Subclass Members, as required by NYLL § 195(1).

59.     Defendant knowingly and willfully failed to provide proper wage statements to Plaintiff and Subclass Members with every wage payment, as required by NYLL § 195(3). Defendant provided fraudulent wage statements that failed to accurately reflect the proper compensation owed and hours worked by Plaintiff and Subclass Members.

60.     Due to the Defendant's NYLL violations, Plaintiff, Class Members, and Subclass Members are entitled to recover from Defendant their unpaid wages, including overtime, due to time shaving; liquidated damages; statutory penalties; reasonable attorneys' fees; and costs and disbursements of the action.

## COUNT II

### VIOLATION OF APPLICABLE STATE WAGE AND HOUR LAWS
### (brought on behalf of a Rule 23 Class)

61.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class Action Complaint as if fully set forth herein.

62.     At all relevant times, Class Members were employed by Defendant within the meaning of the applicable State wage and hour laws, just as Plaintiff were employed by Defendant under the meaning of the State wage and hour law.

63.     Plaintiff can represent the Class because the requirements to pay all employees for all hours worked are enumerated in the state labor laws and are identical for purposes of the Class Member's claims.

64.     Defendant knowingly and willfully violated Plaintiff and Class Members' rights by failing to pay them all proper compensation in a workweek due to a policy of underreporting employees' hours, in violation of the state wage and labor laws outlined above.

65.     Defendant knowingly and willfully failed to provide proper wage statements and notices to Subclass Members, as required under the laws of New York State, California, and Minnesota.

66.     Due to Defendant's state law violations, Plaintiff, Class Members, and Subclass Members are entitled to recover from Defendant their unpaid overtime compensation, liquidated damages, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

67.     In addition to violations of State Labor overtime laws under which Plaintiff bring class (not individual) claims, Defendant violated State provisions requiring employers to pay employees all wages owed.   These state law provisions include the following:

> [e]ach employer in [Arizona] shall designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to his employees [and that] [e]ach employer shall, on each of the regular paydays, pay to the employees . . . all wages due the employees up to such date . . . .[o]vertime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period."

Ariz. Rev. Stat. § 23-351(C); *see also Weeks v. Matrix Absence Mgmt.*, 2022 U.S. Dist. LEXIS 30849 (D. Ariz. 2022)

> Upon prevailing in an action brought pursuant to this section, aggrieved persons shall recover the full amount of any unpaid back wages unlawfully withheld plus the same amount as liquidated damages and shall be awarded reasonable attorney's fees and costs.

Florida Minimum Wage Act, Fla. Stat. § 448.110(6)(c)(1)

> Damages recoverable by an employee. When it has been shown that an employer has intentionally failed to pay an employee wages or reimburse expenses pursuant to section 91A.3, whether as the result of a wage dispute or otherwise, the employer shall be liable to the employee for any wages or expenses that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary. In other instances the employer shall be liable only for unpaid wages or expenses, court costs and usual and necessary attorney's fees incurred in recovering the unpaid wages or expenses.

Iowa Wage Payment Collection Law, Chapter 91A.8; *see also Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 883 (N.D. Iowa 2008) ("[T]he FLSA may be used to establish an employee's right to a certain amount of wages under the IWPCL and an employer's violation of the IWPCL for not paying all wages due its employees." (quotation omitted))

> (a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.
> (b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

Louisiana Wage Payment Act, La. R.S. § 23:631(A)(1)

> An employee having a claim for wages which are not paid within thirty days of the regular payday designated or agreed upon may institute suit for such unpaid wages in the proper court. If an employee establishes a claim and secures judgment on the claim, such employee shall be entitled to recover the full amount of the judgment and all costs of such suit, including reasonable attorney's fees.

Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1231(1)

> In case of any failure to pay wages due to an employee as required by Section 41-10-40 or 41-10-50 the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow. Any civil action for the recovery of wages must be commenced within three years after the wages become due.

South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-80(C).

68.    The Florida Minimum Wage Act has a pre-suit notice requirement. Fla. Stat. § 448.110(6)(a).  However, Plaintiff invoke the Florida Minimum Wage Act but to bring class claims on behalf of class members residing in Florida. Thus, Plaintiff are not personally required to provide Defendant with a pre-suit notice as to each class member.  As to these absent Florida class members, courts in Florida have "found no authority mandating that a detailed pre-suit notice for each and every putative class member be served on [d]efendants under § 448.110(6) prior to the filing of a putative class action under the FMWA." *Griffith v. Landry's, Inc.*, 2016 U.S. Dist. LEXIS 196397, \*12 (M.D. Fla. May 17, 2016).

69.    The Third Circuit Court of Appeals has clearly demonstrated the untenability of any such requirement:

> We raise the following questions to further demonstrate the error of the proposed framework adopted by our dissenting colleagues. If the dissent's "colorable legal claim" test is a threshold inquiry for commonality, why should the court not consider every potential disqualifier from one's having a "colorable legal claim?" For example, in any class certification case, should the court consider whether all potential class members complied with applicable pre-notice requirements under the relevant substantive law? Should the court consider whether every potential class member exhausted her administrative remedies under the relevant substantive law? Should the court evaluate whether each class member's claim complies with the applicable statute of limitations? The answers to these questions most certainly implicate whether a litigant, in a class action or otherwise, has a "colorable legal claim." These questions, moreover, show how flawed, from an administrative, logical, and practical standpoint, the dissent's and objectors' approach really is. No class would ever be certified because it would be impossible to demonstrate that every class member has a "colorable legal claim." (Dissenting Op. at 10.) More than this, it would gut commonality, for, most certainly, individual issues would then predominate. There would simply be no class that could meet this commonality and predominance test.

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 310 (3rd Cir. 2011).

70.    Some states' wage and hour or wage payment statutes may prescribe means other than class actions for pursuing common claims.   Any state restrictions on class actions are irrelevant, however, as this case was filed in federal court, where the Federal Rules of Civil

Procedure hold. See *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400, 130 S. Ct. 1431, 1438 (2010) (F.R.C.P. 23 authorizes "class actions across the board" notwithstanding state law restrictions on class actions); *Dremak v. Iovate Health Scis. Grp., Inc. (In re Hydroxycut Mktg. & Sales Practices Litig.)*, 299 F.R.D. 648, 654 (S.D. Cal. 2014) ("[A]pplication of Rule 23 to Plaintiffs' [FBPA] claims does not run afoul of the Rules Enabling Act. Rule 23 governs Plaintiffs' claims, and Plaintiffs' claims are not subject to dismissal based on the state statutes prohibiting class actions."); *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1336 (11th Cir. 2015) ("The bottom line is this. The Alabama statute restricting class actions, like the New York statute at issue in *Shady Grove*, does not apply in federal court. Rule 23 controls.").

71.     Due to Defendant's state law violations, Plaintiff, Class Members, and Subclass Members are entitled to recover from Defendant their unpaid overtime compensation, liquidated damages, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

## COUNT III

## VIOLATION OF CLASS MEMBERS CONTRACTS AND/OR DEFENDANTS' UNJUST ENRICHMENT
### (brought on behalf of a Rule 23 Class)

72.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

73.     To the extent that the State wage laws do not protect employees for a failure to compensate gap-time (claims for unpaid wages for hours worked up to forty which do not implicate statutory minimum wage laws) or fail to cover claims seeking damages for failure to pay for all

hours of work, Plaintiff and Class Members assert such claims under breach of contract and unjust enrichment.

74.     When Plaintiff and Class Members entered into employment with Defendant, the parties formed implied contracts, which contain inherent duties of good faith and fair dealings, to pay employees at agreed upon hourly rates for all hours worked.

75.     Plaintiff and Class Members provided services to Defendant as required under their agreements.  However, Defendant's failure to compensate all hours of work, including gap-time hours breached the Plaintiff's and Class Members' agreements.

76.     As a direct and proximate result of Defendant's failure to act fairly and in good faith, Plaintiff and Class Members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

77.     Moreover, absent an implied contract, by virtue of Defendant's conduct as alleged herein, and Plaintiff's and Class Members' performance, Defendant was unjustly enriched by the Plaintiff's and Class Members' conduct and did not compensate Plaintiff and Class Members fully.

78.     The circumstances are such that it would be inequitable to allow Defendant to retain the excess benefit from Plaintiff's and Class Members' conduct without paying fair value for it.

79.     As a direct and proximate result of Defendant's wrongful withholding of funds that should have been paid to Plaintiff and Class Members have sustained damages in an amount according to proof at trial.

80.     Defendant's withholding of proper compensation from employees was done with malice and in conscious disregard of Plaintiff's and Class Members' rights with the intent to cause injury to Plaintiff and Class members. Plaintiff and Class Members are entitled to recovery of the

full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and Class Members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the NYLL, and state wage laws;

b. An injunction against Defendant and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c. An award of unpaid wages, including overtime, due to time shaving under the the NYLL, and state wage laws;

d. An award of liquidated and/or punitive damages as a result of Defendant's willful failure to pay proper wages, including overtime compensation, pursuant to the NYLL, and state wage laws;

e. An award of statutory penalties as a result of Defendant's failure to comply with wage notice and wage statement requirements;

f. An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

g.  An award of full amount of wrongfully withheld or diverted payments and punitive

damages due to breach of contract and/or unjust enrichment;

h.  Designation of this action as a class action pursuant to F.R.C.P. 23;

i.  Designation of Plaintiff as Representative of the Class;

j.  Designation of Plaintiff as Representative of the Wage Notice Subclass; and

k.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by

jury on all issues so triable as of right by jury.


Dated: August 6, 2024

Respectfully submitted,

By: */s/ C.K. Lee*

C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*